BRISCOE, Circuit Judge,
concurring and dissenting.
I concur in the majority’s resolution of all of the issues except its affirmance of the Hobbs Act conviction, which I would reverse because of insufficient evidence.
The Hobbs Act provides in relevant part that “[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery” shall be guilty of an offense against the United States. 18 U.S.C. § 1951(a). This court has repeatedly held, even after the Supreme Court’s decision in United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), that, to support a conviction under the Hobbs Act, the government must show only that the defendant’s acts had a minimal effect on interstate commerce. E.g., United States v. Chanthadara, 230 F.3d 1237, 1253 (10th Cir.2000), cert. denied, — U.S. -, 122 S.Ct. 457, 151 L.Ed.2d 376 (2001). For example, this court has held that the required minimal effect on commerce may be established by evidence that the robbery at issue depleted the assets of a business that customarily purchased items in interstate commerce. E.g., United States v. Nguyen, 155 F.3d 1219, 1224 (10th Cir.1998).
At the trial in this case, the government presented evidence indicating that the Northside Tag Agency essentially operated as a collection agency for the State of Oklahoma and provided three general types of goods or services to its customers: (1) it made pictures for drivers’ licenses and Oklahoma state identification cards; (2) it sold Oklahoma license plates for all types of vehicles; and (3) it sold passes for the Oklahoma turnpike. As for the details of the robbery, the government presented evidence that Toles and others entered the Agency at approximately 12:05 p.m. on April 1, 1999, and proceeded to take money from the Agency and the Agency’s employees and customers. The government’s evidence further indicated that, as a result of the robbery, the Agency was forced to close its operations for the afternoon following the robbery.
The government relied on two very limited categories of evidence (both based on the brief testimony of a single witness who worked at the Agency) to attempt to establish that the robbery had the required minimal effect on interstate commerce. First, the government focused on the Agency’s customers, presenting testimony that some of the customers had moved to Oklahoma from other states and were seeking Oklahoma tags and drivers’ licenses, and that out-of-state residents could purchase Oklahoma turnpike passes. Second, the government presented testimony regarding forms of payment accepted by the Agency — it accepted major credit cards whose payments were processed out-of-state, and it accepted out-of-state checks for tags and drivers’ licenses.
In my view, only the second of these categories has any relation to interstate commerce. The Hobbs Act defines “commerce” as “all commerce between any point in a State ... and any point outside thereof; all commerce between points within the same State through any place outside such State.” 18 U.S.C. § 1951(b)(3). The'fact that out-of-state residents may have visited the Agency and purchased items does not satisfy this statutory definition. In other words, barring some additional fact (such as use of an out-of-state form of payment), such a transaction would not involve “commerce between any point in a State ... and any point outside thereof’ or “commerce between points within the same State through any *974 place outside such State.”[1] In contrast, the Agency’s acceptance of major credit cards and out-of-state checks does fall within the statutory definition since it would involve “commerce between points within the same State through any place outside such State.”
I further conclude that the government’s evidence was insufficient to establish that the robbery had the required minimal effect on interstate commerce. Although we generally allow juries in Hobbs Act cases to draw reasonable inferences from the evidence, the government’s evidence here was so limited that the jury, in order to convict Toles, was required to “pil[e] inference on inference.” United States v. Sanders, 240 F.3d 1279, 1283 (10th Cir.2001) (internal quotations omitted). In particular, because there was no evidence as to whether and to what extent the Agency’s transactions involved use of credit cards or out-of-state checks, the jury first was required to infer whether and to what extent such forms of payment were used by Agency customers. Only after doing so, and presumably inferring that such forms of payment were regularly used, could the jury have inferred that the forced closure of the Agency following the robbery probably prevented one or more customers from engaging in transactions and using such forms of payment.[2] The mere fact that credit cards or out-of-state checks could be used to purchase goods and services at the Agency does not establish without further evidentiary foundation that they were used.
It is true, as pointed out by the majority, that we previously have stated that the government need only establish a potential or probable, as opposed to an actual, effect on interstate commerce. See Nguyen, 155 F.3d at 1228. In my view, however, the majority takes our previous statements to an unprecedented extreme, suggesting that literally any possibility, even in the absence of any evidence pertaining to the business’ past experience, is sufficient to establish the required de minimis effect on interstate commerce. This overlooks the fact that other circuits have held, and we seemingly have agreed, that if the government is seeking to establish a probable rather than a direct effect, the government must demonstrate a probability and that the probability was realistic. E.g., United States v. Peterson, 236 F.3d 848, 851-52 (7th Cir.2001) (“We have long held that the government need only show some actual, even if de minimis, effect, or, where there is no actual effect, a realistic probability of an effect, on interstate commerce.”); United States v. Kaplan, 171 F.3d 1351, 1354 (11th Cir.1999) (same); Nguyen, 155 F.3d at 1228 (citing cases from other circuits for this proposition); United States v. Buffey, 899 F.2d 1402, 1404 (4th Cir.1990) (“[Bjroadly as the extension of the interstate commerce requirement has spread, we are still a federal, not a unitary, government and, to satisfy the Act, the government still must show that an effect on interstate commerce is reasonably probable”). While the government’s evidence may have allowed the jury to infer there was some possibility, however remote, that the temporary closure of the Agency prevented use of out-of-state forms of payment, it was not sufficient to establish that this was a reasonable probability. In *975 stead, as previously noted, the jury could have reached such a conclusion only by piling inference upon inference.
The mere proof that the Agency accepted out-of-state forms of payment is not enough, standing alone, to establish that interstate commerce was affected. In Nguyen and Chanthadara, we did not rely exclusively on the acceptance of out-of-state credit cards to establish the interstate commerce requirement. We also relied on the additional evidence that a percentage of the restaurant’s revenues was generated through the use of out-of-state credit cards, that the restaurant purchased goods from several other states, and that sales fell after the robbery. As a result, interstate commerce was affected by the decline in credit card sales and the reduction in purchases from out-of-state vendors.
Finally, it is clear that the government cannot rely on the asset depletion theory utilized in Nguyen and Chanthadara. Under that theory, the robbery of a small amount of money from a business that purchases goods from another state can be deemed to have a sufficient potential aggregate effect on interstate commerce. Here, however, there was no evidence that the Agency itself purchased any items in interstate commerce. Cf. Chanthadara, 230 F.3d at 1253 (concluding robbery of restaurant had effect on interstate commerce where robbery forced restaurant to close for twenty-two days and its revenues dropped markedly after it reopened, causing a reduction in the restaurant’s out-of-state purchasing).
In sum, the government’s evidence was insufficient to support a Hobbs Act conviction. I would reverse Toles’ conviction and vacate his sentence on this count.

. It appears -that the majority does not rely on the out-of-state resident evidence either.

. In my view, the government could have met its evidentiary burden by either presenting evidence regarding how frequently the Agency accepted out-of-state forms of payment (e.g., regularly), or by presenting evidence that one or more customers in the Agency at the time of the robbery intended to use an out-of-state form of payment.